UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>    v.<br><br>BRAIDEN F. WILSON et al.,<br><br>                Defendants. | CASE NO. 2:24-cr-00093-LK<br><br>ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL |

This matter comes before the Court on Defendant Chandler Bennett's Appeal of the Detention Order from Magistrate Judge. Dkt. No. 73. For the reasons set forth below, the Court denies Ms. Bennett's motion.[1]

### I.   BACKGROUND

On May 29, 2024, a grand jury returned an indictment charging Ms. Bennett with one count of Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2, and one count of Unlawful Possession of a

---

[1] As explained below, Ms. Bennett's "appeal" should have been filed as a motion for revocation or amendment of the magistrate judge's order, and the Court construes it as such.

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 1

Machinegun, in violation of 18 U.S.C. §§ 922(o) and 2. Dkt. No. 17 at 1–2. Ms. Bennett pleaded not guilty to both counts on June 6, 2024. Dkt. No. 26. Her trial is currently set for December 16, 2024. Dkt. No. 40 at 2.

After Ms. Bennett's arrest on May 16, 2024, the Government moved for pretrial detention. Dkt. No. 4. That same day, Ms. Bennett stipulated to detention and was ordered detained by Magistrate Judge Brian A. Tsuchida. Dkt. No. 5. In his detention order, Judge Tsuchida concluded that "there are no conditions which [Ms. Bennett] can meet which would reasonably assure [her] appearance as required or the safety of any other person and the community." Dkt. No. 8 at 1.

In July 2024, Ms. Bennett moved to re-open detention on the basis that she needs in-patient treatment for severe opioid use disorder and that American Behavioral Health Systems ("ABHS"), a treatment provider, had a bed available for her. Dkt. No. 44 at 2. Both the Government and Pretrial Services opposed Ms. Bennett's request for pretrial release. Dkt. No. 46 at 1–2, 15 (Government opposition); Dkt. No. 71 (Pretrial Services opposition).

In connection with her motion for pretrial release, Ms. Bennett alleged various forms of Government misconduct and moved for an evidentiary hearing. Dkt. No. 51 at 2–7. On July 31, 2024, Judge Tsuchida denied that motion on the basis that Ms. Bennett's allegations of misconduct were not relevant to the issue of her pretrial release. Dkt. No. 59 at 3–5.

Judge Tsuchida held a second detention hearing on August 1, 2024, which he continued to August 16 to allow Ms. Bennett to provide additional details to related to her release plan. Dkt. No. 61. Judge Tsuchida specifically stated that "what's really concerning is not that treatment is not needed; it's other factors as to whether *release* is appropriate. . . . [T]wo components . . . still need to be worked on. . . . I would actually like to see that there is actually a bed, number 1, and that there's actually a better plan in . . . what we're going to do afterwards" given Ms. Bennett's history. August 1 Hrg. at 10:16–11:37. After reconvening on August 16 to hear additional

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 2

1  argument on Ms. Bennett's release, Judge Tsuchida denied her motion and left the original
2  detention order in effect. Dkt. No. 71; August 16 Hrg. at 10:49–12:11.

3  Ms. Bennett filed her "appeal" on August 21, 2024. Dkt. No. 73. The filing violated
4  numerous rules: it was filed as a same day motion despite the fact that it was opposed, in violation
5  of Local Criminal Rules 12(b)(1), (6), and (8); it failed to include a word count certification in
6  violation of Local Criminal Rule 12(b)(5); and it was approximately 2,020 words overlength in
7  violation of Local Criminal Rule 12(b)(5). *See generally id*. Furthermore, despite taking five days
8  to prepare her (overlength) motion, Ms. Bennett requested that the parties complete briefing and
9  the Court decide the motion in four business days—a request to shorten time that violated Local
10 Criminal Rule 12(b)(11). *Id.* at 1–2. Ms. Bennett argued that shortening time was necessary to
11 preserve her ability—should her release be granted—to claim an in-patient bed at American
12 Behavioral Health Systems ("ABHS") that is available on August 28. Dkt. No. 73 at 1–2.

13 The Government and Pretrial Services filed responses opposing Ms. Bennett's motion on
14 August 23. Dkt. Nos. 78, 83. Ms. Bennett filed a reply the same day. Her brief once again violated
15 Local Criminal Rule 12(b)(5): she again failed to include a word count certification, and her brief
16 was overlength by roughly 150 words. *See generally* Dkt. No. 84.

17                            **II.   DISCUSSION**

18 Having carefully reviewed the record in this case, and given Ms. Bennett's request for an
19 expedited determination of her motion,[2] Dkt. No. 73 at 1–2, the Court elects to proceed without a
20 hearing and decide the motion based on the record.

21

---

[2] The Government argues that Ms. Bennett's request for expedited review amounts to a "self-manufactured emergency." Dkt. No. 78 at 1, 17. Whether or not that is true, the Court agrees with the Government that especially in light of the fact that Ms. Bennett took five days to draft and file her overlength motion, her request that the motion be decided in four business days was unreasonable and put undue time constraints on the Government, Pretrial Services, and the Court.

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 3

### A. Legal Standard

The Bail Reform Act mandates release of a defendant pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). This requirement reflects the principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, "[o]nly in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

The Government bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that she poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). But where, as here, there is probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). Although this presumption shifts the burden of proof to the defendant, the Government retains the burden of persuasion. *Hir*, 517 F.3d at 1086. Importantly, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence" bearing upon the relevant factors. *Id.* (quotation marks and citation omitted).

Those factors are (1) "the nature and circumstances of the offense charged," including whether the offense involves a controlled substance; (2) "the weight of the evidence against the

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 4

person"; (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (a district court must conduct "an individualized evaluation" guided by these factors). The weight of the evidence against the defendant is the least important of these factors, and the Court may not engage in a pretrial determination of guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Although the Court conducts its review of Magistrate Judge Tsuchida's order *de novo*, it need not "start over" or proceed as if his decision and factual findings do not exist. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

**B.     The Court Will Not Hold an Evidentiary Hearing**

The Court denies Ms. Bennett's request for an evidentiary hearing because the evidence she seeks to develop bears little relevance to the Court's analysis of whether her continued detention is appropriate.

The Court first notes that much of Ms. Bennett's argument on this point is overlength. As counsel for Ms. Bennett is aware, Local Criminal Rule 12(b)(5) sets a limit of 4,200 words. The Court therefore strikes and declines to consider the overlength portion of the motion (i.e., page 14, line 24 through page 21). Dkt. No. 73 at 14–21.[3] However, even if the Court were to consider the overlength portions, the Court would nonetheless deny the request for a hearing.

---

[3] The Court likewise does not consider the overlength portion of Ms. Bennett's reply. Dkt. No. 84 at 7–8 (from page 7, line 23 through page 8). It is immaterial that Ms. Bennett combined this reply with her reply regarding her pending motion to compel treatment; she does not identify which portions of her reply relate to which motion, and she instead appears to seek consideration of the entirety of the reply with respect to both motions. The Court will separately address whether it should strike the reply in its entirety in relation to Ms. Bennett's motion to compel treatment. The Court cautions counsel that it may impose more severe sanctions in the future for violations of applicable rules.

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 5

The Court agrees with Judge Tsuchida that the evidence Ms. Bennett hopes to develop is largely irrelevant to the detention inquiry. Dkt. No. 59 at 3–4. This includes evidence that she was cooperative with law enforcement, that the Government misrepresented the functionality of certain surveillance cameras, that her statements to law enforcement were coercively obtained, and that the Government's complaint contained material omissions and misstatements. Dkt. No. 73 at 13–20. Ms. Bennett appears to argue that these matters bear on the "weight of the evidence," *id.* at 12, but it is the grand jury who "gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime," even when it results in "depriving the accused of her freedom." *Kaley v. United States*, 571 U.S. 320, 329–30 (2014). Here, the grand jury did just that in indicting Ms. Bennett. Dkt. No. 17. The evidence she now offers to attempt to rebut the Government's showing does not go to the core of whether she is a flight risk or a danger to the community, and does not address her personal history and characteristics. The Court further notes that Ms. Bennett represents that her "arguments and record in this appeal were largely provided below, so the parties have no need to sort out the facts prior to a thorough district court review." Dkt. No. 73 at 2 (quotation marks and citation omitted).

On balance, granting Ms. Bennett's request for an evidentiary hearing under these circumstances would likely result in the Court "repeat[ing] a process already performed by the grand jury at the possible expense of what is the proper focus in detention hearings, the application of the presumptions and the § 3142(g) factors in deciding whether the defendant should be detained." *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (quotation marks omitted); *see also Kaley*, 571 U.S. at 333 ("A defendant has no right to judicial review of a grand jury's determination of probable cause to think a defendant committed a crime.").

C. **The Section 3142(e)(3) Presumption of Detention Applies Here**

The Court agrees with Judge Tsuchida and the Government that the rebuttable presumption of detention applies here. Dkt. No. 46 at 10–11; Dkt. No. 59 at 2. Ms. Bennett is charged with a serious and presumption-eligible offense, and the Court finds probable cause based on the indictment to believe that Ms. Bennett committed this offense. *See Kaley*, 571 U.S. at 329 n.6 (the presumption operates "whenever an indictment charges [eligible] offenses," and courts have uniformly "denied defendants' calls for any judicial reconsideration of that issue"); *see also* Dkt. No. 17.

In the overlength portion of her motion, Ms. Bennett asks the Court not to apply the presumption here because it "gives unconstitutional weight to the government's decision to charge a woman of circumstance without direct evidence of guilt and based on a Complaint filled with lies and material omissions." Dkt. No. 73 at 20. Even if the Court were to consider this hyperbolic argument, it is unsupported and ultimately has no practical import because the Court would deny pretrial release here with or without the presumption.

D. **Ms. Bennett Has Not Rebutted the Section 3142(e)(3) Presumption**

Because the presumption of detention applies, it is Ms. Bennett's burden to rebut it by reasonably assuring the Court that she does not pose a danger to the community and is not a flight risk. *See United States v. Rhule*, No. CR20-0105-JCC-2, 2020 WL 5984072, at *3 (W.D. Wash. Oct. 8, 2020). Ms. Bennett has not done that.

*Risk of flight.* Ms. Bennett provides no evidence of her ties to the community, nor does she seriously grapple with her extensive history of failing to appear for court dates. *See generally* Dkt. No. 73. In lieu of such evidence, Ms. Bennett suggests GPS tracking as condition of her release, and presents this as a condition that can reasonably assure her future appearances, citing various district court cases as support. Dkt. No. 73 at 5. But even assuming that those cases were

sufficiently analogous (and many, if not all of them are not), this Court is not bound by district court decisions, and it finds based on its individualized evaluation in this case that Ms. Bennett's long history of failing to appear for court hearings and of probation and supervision violations show that she is a flight risk. Indeed, this misconduct resulted in at least 12 warrants being issued for her arrest between 2012 and 2019. Dkt. No. 6 at 2–4; Dkt. No. 60 at 5–7. More than once, she fled for months at a time. Dkt. No. 6 at 2–4; Dkt. No. 60 at 5–7. Ms. Bennett does not dispute this history, and certainly does nothing to reasonably assure the Court that this time would be different, even with GPS tracking. *See United States v. Nasr*, No. 24 CR. 19 (AT), 2024 WL 3102178, at *4 (S.D.N.Y. June 24, 2024) ("[A]nkle monitors can be removed and ensure only a reduced head start should a defendant decide to flee."); *United States v. Khanu*, 675 F. Supp. 2d 69, 74 (D.D.C. 2009) (quotation marks and citation omitted) (finding it "well settled" that "use of [a] GPS device . . . do[es] not guarantee against flight"). The Court finds that Ms. Bennett presents a significant flight risk given her lack of ties to the district, history of absconding, transient living history, and lack of stable employment.

*Danger to the community*. There is relatively little in the record that might counter the statutory presumption of dangerousness. Ms. Bennett's prior criminal history is extensive, and although she does not have a history of violent crimes, *see* Dkt. No. 6 at 2–4; Dkt. No. 60 at 5–7, that does not negate her potential danger to the community. *See, e.g.*, *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that danger to the community is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community).

Ms. Bennett is accused of distribution of fentanyl, an exceptionally dangerous drug.[4] Fentanyl's danger to the community "has been recognized by courts which have denied pretrial release in fentanyl trafficking cases." *United States v. Salazar-Vega*, No. 22-cr- 05041, 2022 WL 16694370, at *4 (D. Ariz. Nov. 3, 2022) (collecting cases).[5] The risk of danger to the community is particularly acute in cases involving drugs *and* firearms. *See, e.g.*, *United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs" establishes "a significant danger" and "[t]he addition of guns to the equation only increases that danger"); *United States v. Jackson*, No. 5:21-MJ-05392, 2022 WL 18721, at *8 (E.D. Ky. Jan. 3, 2022) (similar). Although Ms. Bennett seeks pretrial release to obtain treatment for her substance abuse disorder, Pretrial Services notes that she was accessing treatment at the time of her arrest, Dkt. No. 83 at 2,[6] casting further doubt as to whether the treatment she now seeks would be enough to prevent her from returning to criminal activity.

### E.     The Section 3142(g) Factors Also Weigh Against Pretrial Release

Finally, even if Ms. Bennett had come forward with something to counter the 3142(e)(3) presumption (she has not), the Section 3142(g) factors decidedly weigh in favor of detention even absent the presumption.

*Factor 1*. The first factor is the "nature and circumstances of the offense charged," including whether the offense involves a controlled substance. 18 U.S.C. § 3142(g)(1). As

---

[4] According to the CDC, fentanyl is "up to 50 times stronger than heroin and 100 times stronger than morphine." Centers for Disease Control and Prevention, *Fentanyl Facts*, https://www.cdc.gov/stop-overdose/caring/fentanyl-facts.html (last visited August 25, 2024).

[5] *See also, e.g.*, *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (denying release, noting that "[i]t is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community—and the risks associated with fentanyl specifically are even greater"); *United States v. Coley*, No. 2:23-cr-92, 2023 WL 3271146, at *3 (M.D. Ala. May 5, 2023) (denying release, noting that "the dangerousness of fentanyl is exceptional, even when compared to other exceptionally dangerous drugs"); *United States v. Brown*, 538 F. Supp. 3d 154, 170 (D.D.C. 2021) (denying release and emphasizing that "a dose of just two *milligrams* of fentanyl is lethal").

[6] In the first 10 minutes of her interview with law enforcement, Ms. Bennett estimates that she regularly smokes "at least 20" fentanyl pills per day despite being on Suboxone. Dkt. No. 78-1 at 7:48–9:06.

discussed above, the indictment charges Ms. Bennett with possession of and intent to distribute a controlled substance, Dkt. No. 17 at 1, an offense Congress has set apart as so dangerous that it requires a presumption of detention. The indictment also charges Ms. Bennett with unlawful possession of a machinegun. *Id.* at 2. These are extremely serious offenses that weigh against pretrial release. *See, e.g.*, *Jackson*, No. 5:21-MJ-05392, 2022 WL 18721, at *6 (first factor weighed against release where "loaded firearms and ammunition [were] found near [defendant] at the time of his arrest and at his home, where the drugs and trafficking paraphernalia were located").

*Factor 2*. The second factor concerns the "weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). This factor is considered in terms of the defendant's flight risk and dangerousness, rather than an adjudication of guilt for a particular offense. *Motamedi*, 767 F.2d at 1408. Having reviewed the evidence the Government put forward—including the text messages on Ms. Bennett's phone that appear to be coordinating the purchase of large quantities of fentanyl (among other drugs), Dkt. No. 78 at 8,[7] and Ms. Bennett's statements regarding the firearms and explosives material recovered by law enforcement, Dkt. No. 78-1—the Court finds this factor weighs against pretrial release.

*Factor 3*. This factor considers "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Ms. Bennett's criminal history

---

[7] Ms. Bennett accuses the Government of "sandbag[ging]" her with these screenshots of texts from her phone and asks the Court to "exclude these unverified texts, as the government never produced them in discovery and has produced nothing related to Ms. Bennett's alleged phone or the government's seizure and search of it." Dkt. No. 84 at 7. The Court's detention analysis is unaffected by the contention at this stage that certain evidence may be the subject of a suppression motion. *See* 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."); *United States v. Ilg*, No. 2:21-cr-00049, 2021 WL 5575878, at *2 ("[T]he rules of evidence do not apply at a detention hearing under the Bail Reform Act.").

shows several years of drug-related (and other) offenses and repeated failures to show up for court dates and to comply with supervision. Dkt. No. 6 at 2–4; Dkt. No. 60 at 5–7. As the Government observes, she appears to lack any employment or family or community ties, and has a "transient living history." Dkt. No. 78 at 14–16; *see generally* Dkt. No. 73. While Ms. Bennett has a sister who lives in Washington, she has no contact with any member of her family, and she and Mr. Wilson lived in hotels in different cities for several years before residing in the recreational vehicle that was seized in connection with this case. Dkt. No. 60 at 2. Finally, although Ms. Bennett has shown willingness to seek treatment for her substance abuse disorder, that treatment has not deterred her from a consistent pattern of crime. Dkt. No. 73 at 3–6 (discussing Ms. Bennett's past efforts to seek treatment); Dkt. No. 6 at 2–4 (Ms. Bennett's criminal history); Dkt. No. 60 at 5–7; Dkt. No. 84 at 8 ("Ms. Bennett has long sought and obtained treatment and prescription medication for her substance use disorder and serious mental health conditions."). Accordingly, this factor also weighs against pretrial release.

*Factor 4*. The final factor to consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As already discussed, Ms. Bennett's extensive criminal history, coupled with her current charges for possession of fentanyl with intent to distribute and unlawful possession of a machinegun, are extremely troubling. Congress has determined that Ms. Bennett is presumptively a danger to the community—and even absent that presumption, Ms. Bennett's extensive criminal history and disregard for the law, even while receiving treatment in the past, demonstrate that she both poses a risk of failure to appear and danger to the community.[8]

---

[8] Again, the Court is not persuaded that GPS tracking—even with home confinement, which Ms. Bennett has not proposed as a condition of release, *see generally* Dkt. No. 73—would reasonably assure the community's safety. *See, e.g.*, *Jackson*, 2022 WL 18721, at *8 ("Even strict location conditions, such as home detention and/or GPS monitoring, are frequently insufficient to reasonably ensure cessation of criminal activity when it arises in the context of a

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 11

**F.     The Court Grants the Government's Motion to Seal**

The Government has moved to seal Exhibit B to its response to Ms. Bennett's motion. Dkt. No. 80. Exhibit B contains Ms. Bennett's "sensitive and personal [medical] information" related to the "care she is receiving while incarcerated at the SeaTac Federal Detention Center." *Id.* at 1–2. The Court grants the motion.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Despite the public's presumptive right of access to documents in criminal proceedings, a document may remain under seal "when (1) sealing a document serves a compelling interest, (2) that is substantially likely to be harmed if the document is not sealed, and (3) there are no less restrictive alternatives for protecting the interest." *United States v. Parson*, No. 3:15-cr-05262-DGE, 2022 WL 558221, at *2 (W.D. Wash. Feb. 24, 2022) (citing *United States v. Doe,* 870 F.3d 991, 998 (9th Cir. 2017)). The Court has reviewed the document at issue, which contains Ms. Bennett's sensitive medical information. Dkt. No. 81. The Court finds that sealing the exhibit would serve a compelling interest in protecting Ms. Bennett's medical privacy. *See, e.g.*, *Karpenski v. Am. Gen. Life Cos., LLC*, No. 2:12-cv-01569-RSM, 2013 WL 5588312, at *1 (W.D. Wash. Oct. 9, 2013) (need to protect medical privacy qualifies as a "compelling reason" for sealing records); *Parson*, 2022 WL 558221, at *2–3 (same). There are no less restrictive means of protecting Ms. Bennett's privacy.

---

relatively advanced drug trafficking operation."); *United States v. Nova*, No. 16-cr-060, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home).

ORDER DENYING MOTION FOR REVOCATION OF DETENTION ORDER AND GRANTING MOTION TO SEAL - 12

### III.  CONCLUSION

Based upon an examination of the relevant factors discussed above, the United States has established by clear and convincing evidence that Ms. Bennett is a danger to the community, and by a preponderance of the evidence that she is a flight risk. Ms. Bennett has failed to overcome the resulting presumption as to risk of flight and dangerousness. Based on its individualized evaluation in this case, the Court finds that no condition or combination of conditions will reasonably assure the appearance of Ms. Bennett as required and the safety of any other person and the community. The Court therefore DENIES Ms. Bennett's motion for revocation of the detention order. Dkt. No. 73.

For the reasons explained above, the Court GRANTS the Government's motion to seal. Dkt. No. 80. The exhibit may remain under seal. Dkt. No. 81.

Dated this 27th day of August, 2024.

Lauren King
United States District Judge